UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARLA P. GARRISON,          )
                            )
        Plaintiff,          )
                            )
    v.                      )   Case No. 4:11CV1503 FRB
                            )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,         )
                            )
        Defendant.          )

**<u>MEMORANDUM AND ORDER</u>**

This matter is on appeal from an adverse ruling by the Commissioner of Social Security.  All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.    Procedural Background**

Plaintiff Darla P. Garrison ("plaintiff") applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), alleging that she became unable to work due to disability on May 25, 2005.  (Administrative Transcript ("Tr.") 112-19).  After her application was denied, she requested a hearing before an administrative law judge ("ALJ") which was held on February 4, 2010.  (Tr. 8-27).  On March 19, 2010, the ALJ issued a decision in which she determined that plaintiff was not disabled under the Act.  (Tr. 30-39).

Plaintiff sought review from defendant agency's Appeals Council, which denied her request for review on July 27, 2011.

-1-

(Tr. 1-4).  The ALJ's decision thus stands as the Commissioner's final decision under 42 U.S.C. § 405(g).

## II.    Evidence Before The ALJ

A.    Plaintiff's Testimony

Plaintiff, age 37 at the time of the administrative hearing, testified that she had a G.E.D. and training as a Certified Nurse's Assistant.  (Tr. 11).  She attended vocational rehabilitation in 2006.  (Tr. 12).  Plaintiff testified that she became disabled on May 25, 2005 following an accident at work. (Tr. 15).  Plaintiff described the accident as follows: "I had twisted, immediately had severe pain shooting down my leg, could hardly walk, and reported it, basically, after that and went to the doctor."  (Id.)  Plaintiff reported the accident to her employer, and her employer referred her for medical treatment that included diagnostic testing.  (Tr. 16).  Plaintiff testified that she underwent conservative treatment including physical therapy, manipulation, and stimulation, and ultimately underwent surgery in July of 2005.  (Id.)

Following surgery, plaintiff had symptoms in her legs, and was referred to a physician who performed facet injections, but the injections did not help.  (Tr. 17).  Plaintiff was then referred to  a pain management specialist who also performed injections including hip injections.  (Tr. 18).  Plaintiff testified that the hip joint injections helped at the time, but that her back pain never went away.  (Id.)  Plaintiff testified that she tried to return to work in September of 2005, but left

after two days due to pain in her legs.  (Id.)  Plaintiff testified that she has had additional injections in her back and knee joints, and also underwent "smart lipo" on her stomach to remove weight from her stomach in an effort to alleviate her back pain, but this did not help.  (Tr. 19).

Plaintiff testified that she filed a workman's compensation case, which was resolved via a settlement of approximately $126,000.00 in April or March of 2007.  (Id.)  Plaintiff testified that, since the resolution of her workers' compensation case, she has been undergoing treatment from a doctor named Dr. Khattak.  (Tr. 20).

She testified that she has constant pain down the back of her spine and that, when she sat straight up, the pain shoots down her left leg "and then it'll go from the knees straight down to the bone."  (Tr. 21).  Plaintiff also stated that her feet were "numb and tingly."  (Id.)  She testified that, on a monthly or bi-monthly basis, she had "periodic pain episodes" or "flare ups" that were triggered by twisting, turning the wrong way, or straining, and which resulted in her being unable to do anything.  (Tr. 21-22).  Plaintiff testified that these episodes lasted for about two weeks, and that she could be in bed for that long.  (Tr. 22).

Plaintiff testified that, when sitting, she turned her body in order to keep her weight off her back.  (Tr. 23).  She stated that she needed to recline with her legs elevated.  (Id.)  She testified that she had been told that her present condition was as good as she was going to get.  (Id.)  She stated that she was

-3-

able to do some housework for ten to fifteen minutes at a time, and could "do little things and then recline, get off my back." (Tr. 23-24). She explained that she could dust as long as she did not have to reach or bend, and could fold clothes as long as she could stop and recline to get off her back. (Id.) She did not drive unless she "absolutely would have to, emergency-wise." (Tr. 24). The ALJ asked plaintiff when she last drove, and she responded "[a] couple of months ago." (Id.) The ALJ asked plaintiff how that went, and plaintiff responded "I mean, I do it if I have to, like if my daughter has to be picked up from school, or for being sick or something. It - - I don't go a far distance, because I can't stand it." (Id.) Plaintiff explained that sitting straight up in a car and using her feet caused strain and symptoms of pain shooting down her leg and down her tail bone, and "numbness and coldness" in her feet. (Id.)

Plaintiff testified that she slept in a recliner because she could not lay flat, and woke frequently during the night. (Tr. 24-25). She testified that she could not participate in her children's school activities because she could not tolerate sitting. (Tr. 25). She did not go to movies or restaurants, but she did watch television and read. (Tr. 26).

B.  Medical Evidence

Records from Saint Louis Spine Care Alliance (the office of David S. Raskas, M.D. and Patricia A. Hurford, M.D., M.S.) indicate that plaintiff saw Dr. Hurford on May 24, 2005 for back and leg complaints following a back injury at work. (Tr. 373). On

-4-

that date, psychiatric evaluation was negative for depression. (Tr. 374).

Records from Missouri Baptist Medical Center indicate that CT scan performed on June 3, 2005, revealed diffuse degenerative disk disease at L5-S1, and a radial tear in the L4-5 disk with central and left lateral disk protrusion. (Tr. 361). On July 2, 2005, Dr. Raskas performed an L4-5, L5-S1 diskectomy with decompression and fusion. (Tr. 362-72).

On July 29, 2005, plaintiff saw Dr. Raskas with complaints of leg pain the same as before surgery, but stated that her back felt better than before surgery. (Tr. 380). X-rays showed a healing lumbar spine fusion. (Tr. 381). She returned on September 2, 2005 and stated that she felt a lot better than before surgery, but still had pain in her lower legs and back going into her buttocks, and also felt depressed. (Tr. 383). Dr. Raskas increased plaintiff's Prozac dosage and advised her to wean off her opiate-based pain medication. (Id.) Dr. Raskas released plaintiff to return to sedentary-type office work, and advised plaintiff to increase her activity level. (Id.)

On October 3, 2005, plaintiff returned to Dr. Raskas and reported that she was miserable with back and leg pain. (Tr. 388). Dr. Raskas noted that he had reviewed the results of plaintiff's discogram and that she only had positive responses at L4-5 and L5-S1. (Id.) Dr. Raskas wrote that he was unsure whether plaintiff had chronic pain behavior problems or whether there was a structural abnormality, and ordered a myelogram, CAT scan and MRI

-5-

and instructed plaintiff to remain off work.  (Id.)  She returned
on October 14, 2005, and Dr. Raskas noted that the results of
plaintiff's testing showed the L3-L4 disk to be completely normal,
with no evidence of any neurologic compression.  (Tr. 392).  Dr.
Raskas wrote that he was "at a loss to explain why she initially
was doing well after surgery and then now, since just going to back
to work, [sic] is doing much worse."  (Id.)  Dr. Raskas noted that
neurovascular examination was intact, but that plaintiff was quite
tearful during the examination and felt stressed overall.  (Id.)
He referred plaintiff for a second opinion.  (Id.)  Plaintiff
returned to Dr. Hurford on October 20, 2005 and October 26, 2005
for injections.  (Tr. 393-95).

On November 8, 2005, plaintiff was seen at PremierCare by
Ravi V. Shitut, M.D., with complaints of low back pain and
bilateral lower extremity symptoms, left side worse than right.
(Tr. 345).  She reported being injured at work, and also reported
trying to return to work but being unable to due to pain.  (Tr.
346-47).  Upon examination, plaintiff's cervical and thoracic spine
were straight with normal range of motion.  (Tr. 346).  Plaintiff
walked with a normal gait and could walk on her toes and heels.
(Id.)  Her back was stiff and hip motion caused pain, but straight-
leg raise testing was negative bilaterally.  (Tr. 347).  Plaintiff
had some numbness in her right big toe but normal reflexes, and
there was no atrophy.  (Id.)  Dr. Shitut described plaintiff as
"minimally overweight."  (Tr. 346).

Dr. Shitut noted that plaintiff's post-operative x-rays

-6-

were satisfactory, her surgical fusion appeared satisfactory, that there was no significant pathology at the L3-L4 level, and that additional surgery was not recommended.  (Tr. 347).  Dr. Shitut recommended rehabilitation and pain control.  (Tr. 347-48).

Plaintiff returned to Dr. Hurford on November 14, 2005 with complaints of pain in her back and leg, and noted that the facet injections had not helped at all.  (Tr. 396).  Dr. Hurford noted that plaintiff's fusion looked very good, and that plaintiff was likely developing a solid fusion.  (Id.)  She recommended that plaintiff begin physical therapy, remain off work, and return in five weeks.  (Id.)

Records from Pain Prevention & Rehabilitation Center indicate that plaintiff was seen on November 30, 2005 by Manish Suthar, M.D.  (Tr. 349).  Plaintiff reported bilateral low back pain and bilateral lower extremity pain that began in September of 2004.  (Id.)  Plaintiff described her pain as a burning pain in her bilateral lower back, and stabbing pain in her tailbone and buttocks and hips down her left thigh.  (Id.)  She also described achy pain in front of her left calf and achy pain in her bilateral feet.  (Id.)  She rated her pain as seven on a scale of one to ten, and stated that it was aggravated by sitting, standing, activity, exercise, and cold.  (Tr. 349).  She was taking no medications.  (Id.)  Upon examination, Dr. Suthar noted that plaintiff appeared to be in a mild to moderate degree of pain, and was tearful and frustrated.  (Tr. 350).  Dr. Suthar noted there was no real indication of symptom magnification.  (Id.)  Straight leg raise

-7-

testing was negative.  (Id.)  Dr. Suthar diagnosed chronic pain syndrome with major depression as a contributing factor, and hip joint bursitis.  (Id.)  Dr. Suthar wrote that it was important for plaintiff to "begin some form of regular exercising" every day such as water exercise for 30 to 45 minutes.  (Tr. 350).  He prescribed Norco, Elavil, and Cymbalta, and advised plaintiff to return for hip injections.  (Tr. 351).  Dr. Suthar wrote "I do feel that she can do a sedentary to light form of work."  (Id.)

Plaintiff returned to Dr. Suthar on December 1, 2005 to undergo hip injection.  (Tr. 352).  She returned on December 29, 2005 for a follow-up visit, and it was noted that she was "doing remarkably better."  (Tr. 356).  She had followed Dr. Suthar's recommendation to do water exercise, and Dr. Suthar noted that during "[h]er last few trips to the YMCA she was able to exercise for a full hour which is a vast improvement."  (Id.)  Plaintiff reported no new complaints, and stated that she was extremely pleased with the results of her hip injections but that the effects were starting to wear off.  (Id.)  Dr. Suthar changed plaintiff's medications in order to reduce her opioid usage, and ordered a more advanced acquatic fitness exercise class, and stated that plaintiff's work status should remain the same.  (Id.)

On January 4, 2006, plaintiff returned to Dr. Suthar and reported a significant amount of lower back pain that had worsened since her last visit, and epidural injection was performed.  (Tr. 357).  Dr. Suthar noted that the reduction in plaintiff's opioid usage may account for her increased pain.  (Id.)  Plaintiff

-8-

returned on January 30, 2006 and reported that she was doing
remarkably well. (Tr. 358). Dr. Suthar wrote that he was very
pleased with all of plaintiff's efforts to help herself get better,
noting that she was walking regularly for at least 30 minutes per
day and was performing water exercise on a daily basis. (Id.) He
wrote that plaintiff had become more active and had developed more
endurance and stamina. (Id.) Dr. Suthar wrote that he was
releasing plaintiff on a light duty level of work, and wrote that,
as plaintiff got stronger and more physically fit she would be able
to do even more physical activity. (Id.) Dr. Suthar wrote that he
understood that plaintiff would probably not return to her former
job, and that plaintiff anticipated looking for work that fell into
a more sedentary or light category of work. (Tr. 358).

On January 30, 2006 plaintiff returned to Dr. Raskas and
reported that she was doing pretty well and making good progress;
that she had started to exercise independently, and had joined the
YMCA. (Tr. 400). Neurologic examination was within normal limits.
(Id.) X-ray revealed a probable solid fusion at L4-S1. (Tr. 401).
Dr. Raskas noted that plaintiff was still treating with Dr. Suthar,
and that there was "still some room to be made on weaning her off
the pain medicine with Dr. Suthar." (Tr. 400). Dr. Raskas
released plaintiff to return to work with a 30-pound lifting
restriction, and wrote that this was "probably somewhere near her
permanent restrictions." (Id.)

On June 21, 2006, plaintiff underwent an independent
medical evaluation with Shawn L. Berkin, D.O. (Tr. 404-12). Dr.

-9-

Berkin noted that plaintiff sustained two on-the-job injuries to her lower back. (Tr. 405). Plaintiff complained of pain and tenderness to her lower back which she rated as an eight or nine on a scale of one to ten when her pain medication wore off. (Tr. 407). Plaintiff was tearful when describing her symptoms, and stated that, if she did a little bit of activity at home, she will feel it later. (Id.) She complained of tightness and muscle spasms to her lower back, she reported pain extending into her left leg and pain in her joints when getting out of bed, and she stated that she could not lift or carry her children. (Id.) Plaintiff stated that she felt depressed, and that she could not sit for longer than one hour. (Id.) Upon examination, plaintiff walked normally but was tender in her lower back with muscle spasm over the paralumbar muscles. (Tr. 408). She had normal muscle bulk and tone, and normal reflexes. (Tr. 408-09). Straight leg raise testing was positive at 60 degrees. (Tr. 408).

Dr. Berkin opined that plaintiff should not return to her prior employment, but that plaintiff should pursue employment at a sedentary work demand level. (Tr. 411). Dr. Berkin opined that plaintiff should participate in a home exercise program and should avoid excessive squatting, stooping, turning, twisting, lifting, and climbing, and should avoid walking and standing for extended periods of time. (Id.) Dr. Berkin opined that, if plaintiff was required to sit, "she should be allowed to stand, stretch and move about on an hourly basis in order to minimize her lower back symptoms." (Id.) Dr. Berkin imposed a 15 to 20-pound lifting

-10-

restriction from the floor to the waist as a single event, and a ten-pound lifting restriction from the waist to the level of the shoulder. (Tr. 412). He opined that she should employ proper body mechanics when lifting, and use appropriate measures when performing activities involving the back. (Id.) Dr. Berkin opined that if plaintiff was required to perform even minimal exertion for an extended period of time, she should be permitted frequent breaks. (Id.)

MRI of plaintiff's left knee, performed on September 7, 2006 at Jefferson Memorial Hospital, showed degeneration of the medial and lateral meniscus and degeneration of the cartilage under the kneecap. (Tr. 306).

Records from Hafiz Khattak, M.D., indicate that plaintiff was seen on several occasions from September 7, 2006 through October 16, 2008 for pain management. (Tr. 309-25). When she presented for treatment, she characterized her pain as ranging from moderate to severe. (Id.)

The record indicates that plaintiff sought treatment from Brij R. Vaid, M.D. for complaints including chronic back pain, knee pain and ADD from July 26, 2006 to April 2, 2008. (Tr. 181-241). Dr. Vaid's records indicate that plaintiff was prescribed prescription pain medication and medications for depression. (Id.)

X-ray of plaintiff's left knee, performed on August 14, 2006 at Jefferson Memorial Hospital, revealed soft tissue swelling and joint effusion. (Tr. 248). An MRI of plaintiff's left knee, performed on September 7, 2006, revealed joint effusion,

-11-

degeneration of the medial and lateral meniscus, and degeneration of the cartilage behind the kneecap.  (Tr. 247).

On November 26, 2007, Gurpreet Padda, M.D. performed a procedure to insert an intrathecal pump, a device used to administer pain medication directly to the spine.  (Tr. 268).  It is indicated that this pump was to be used on a trial basis.  (Id.)

Records from the Center For Interventional Pain Management show that plaintiff was seen for pain management, including nerve block therapy, from July 26, 2006 to July 2, 2008 by Dr. Padda.  (Tr. 249-304).

MRI of plaintiff's lumbar spine performed on June 12, 2008 revealed mild disc bulging at L3-4 with no stenosis, and post-operative changes at L4 to S1 with no evidence of disc protrusion or stenosis.  (Tr. 307-08).  Right knee x-ray performed on July 2, 2008 revealed mild posterior angulation at the femoral/tibial articulations but no other abnormalities.  (Tr. 244).

On November 12, 2008, Medical Consultant Amy Blattel completed a Physical Residual Functional Capacity Assessment form. (Tr. 326-31).  Ms. Blattel opined that plaintiff could occasionally lift and carry ten pounds and frequently lift less than ten; could stand and/or walk for at least two hours in an eight-hour workday and sit for six; and could push and/or pull without limitation. (Tr. 327).  She opined that plaintiff should only occasionally kneel but could frequently perform all other postural maneuvers, and that plaintiff had no manipulative, visual, communicative or environmental limitations.  (Tr. 329-30).

-12-

Records from Dr. Khattak indicate that plaintiff was seen on several occasions from November 11, 2008 to August 20, 2009 for pain management. (Tr. 332-44). Plaintiff consistently rated her pain as a two or three, and on one occasion a four, on a scale of one to ten, and Dr. Khattak repeatedly noted normal musculoskeletal, neurologic, and psychiatric examinations. (Id.)

Records from Saint Louis Internal Medicine indicate that plaintiff presented for treatment on July 10, 2009 and August 10, 2009. (Tr. 413-28). Plaintiff reported that her back pain was controlled by medications. (Tr. 420). She was instructed to continue her medications. (Tr. 418).

Records from Dr. Khattak indicate that plaintiff was seen for pain management on September 15, 2009, November 5, 2009, and November 15, 2009. (Tr. 429-30; 431-32; 433-34). Plaintiff characterized her back pain as moderate, corresponding to a three on a scale of one to ten. (Tr. 430, 432, 434). Musculoskeletal, neurologic, and psychological examination were normal. (Tr. 429, 431, 433). Dr. Khattak diagnosed plaintiff with chronic low back pain and refilled her medications. (Id.)

On November 24, 2009, plaintiff saw Dr. Khattak with complaints of lower back pain which she characterized as a three to four, and which she described as sharp, dull, and aching, with radicular symptoms down both legs. (Tr. 435). Musculoskeletal, neurologic and psychiatric examination were negative. (Tr. 436).

On February 2, 2010, Dr. Khattak completed a Physical Residual Functional Capacity Questionnaire. (Tr. 438-42). Dr.

-13-

Khattak wrote that plaintiff had chronic low back pain, spondylitis, and failed back syndrome.  (Tr. 438).  He noted that plaintiff had periodic pain episodes, flare-ups, general fatigue, and radiating pain.  (Id.)  Dr. Khattak opined that emotional factors played no role in her symptoms.  (Id.)  He opined that plaintiff could sit, stand, and/or walk less than two hours in an eight-hour workday, and needed a position that allowed shifting positions from sitting to standing to walking.  (Tr. 439-40).  He opined that plaintiff needed to include periods of walking around during an eight-hour day.  (Tr. 440).  Dr. Khattak opined that plaintiff would need more than ten breaks of ten to twenty minute duration per day.  (Id.)  Dr. Khattak opined that plaintiff could occasionally lift and carry ten  pounds but should never twist, stoop/bend, or climb ladders.  (Tr. 440-41).  He opined that plaintiff could rarely crouch/squat or climb stairs.  (Tr. 441). Dr. Khattak opined that plaintiff's impairments would probably cause her to be absent from work more than four days per month. (Id.)

### III.    The ALJ's Decision

The ALJ in this case determined that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with the residuals of surgery, but that she did not have an impairment, or combination of impairments, of listing-level severity.  (Tr. 35).  The ALJ determined that plaintiff had the residual functional capacity (also "RFC") to perform the full range

of sedentary work as defined in 20 C.F.R. § 404.1567(a).[1]   (Id.)
The ALJ determined that plaintiff could perform her past work as a
medical office receptionist.  (Tr. 39).   The ALJ concluded that
plaintiff was not under a disability as defined in the Act at any
time through the date of the decision.

## IV.    Discussion

The  Social  Security  Act  defines  disability  as  the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual
will be declared disabled "only if [her] physical or mental
impairment or impairments are of such severity that [she] is not
only unable to do [her] previous work but cannot, considering [her]
age, education, and work experience, engage in any other kind of

---

[1]Sedentary work is defined as follows:

> Sedentary work involves lifting no more than
> 10 pounds at a time and occasionally lifting
> or  carrying  articles  like  docket  files,
> ledgers, and small tools. Although a sedentary
> job is defined as one which involves sitting,
> a certain amount of walking and standing is
> often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are
> required  occasionally  and  other  sedentary
> criteria are met.

20 C.F.R. § 404.1567(a).

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is presently engaged in substantial gainful activity.  If so, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether the claimant's impairment(s) meet or equal any listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to a listed impairment, she is conclusively disabled. At the fourth step, the Commissioner determines whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance, but enough that a reasonable person would find adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  To determine whether evidence is substantial, this Court considers "evidence that

-16-

detracts from the Commissioner's decision as well as evidence that supports it." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).  This Court is not permitted to reverse "merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently. Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003) (quoting Davis v. Apfel, 239 F.3d 962, 966 (8th Cir.  2001)); see also Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted) ("if there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision").

In the case at bar, plaintiff challenges the ALJ's RFC findings, and also contends that the ALJ improperly determined that plaintiff could return to her past work.  In response, the Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole.

A. <u>Credibility Determination</u>

In the case at bar, the ALJ wrote that he had considered plaintiff's subjective complaints of symptoms precluding all work in accordance with 20 C.F.R. § 404.1529 and Polaski.  The ALJ then noted several inconsistencies in the record, including plaintiff's daily activities, which detracted from the credibility of her subjective complaints. Plaintiff contends that the ALJ improperly considered her daily activities.  Review of the record reveals no error.

-17-

Before determining the claimant's residual functional capacity, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall, 274 F.3d at 1217.) Testimony regarding pain is necessarily subjective in nature, as it is the claimant's own perception of the effects of her alleged physical impairment. Halpin v. Shalala, 999 F.2d 342, 346 (8th Cir. 1993). Because of the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect. Polaski at 1321-22. In Polaski, the Eighth Circuit addressed this difficulty and established the following standard for the evaluation of subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

> Id. at 1322.

Although the ALJ is not free to accept or reject the claimant's subjective complaints based upon personal observations alone, he may discount such complaints if there are inconsistencies

in the evidence as a whole.  Id.  The "crucial question" is not whether the claimant experiences symptoms, but whether her credible subjective complaints prevent her from working.  Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003).  When an ALJ considers the Polaski factors and discredits a claimant's complaints for a good reason, that decision should be upheld.  Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001).  The credibility of a claimant's subjective testimony is primarily for the ALJ, not the courts, to decide, and the court considers with deference the ALJ's decision on the subject.  Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).

Plaintiff contends that the ALJ improperly considered her daily activities as detracting from the credibility of her subjective allegations.  As the Eighth Circuit has recognized, there are some "mixed signals" regarding the significance of a claimant's daily activities in evaluating claims of disabling pain.  Clevenger v. Social Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009).  However, it is well-settled that an ALJ may properly consider daily activities as one factor in evaluating the credibility of a claimant's subjective complaints.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  This is what the ALJ did in this case: she considered plaintiff's daily activities as one factor in evaluating her claims of pain and other symptoms precluding all work.

In assessing plaintiff's credibility, the ALJ in this case noted plaintiff's fusion surgery and post-surgical care.  The ALJ noted that, when plaintiff was evaluated in October and

-19-

November of 2005, her post-surgical radiological reports revealed a satisfactory surgical fusion with no significant pathology at L3-4; a myelogram revealed no hardware failure; straight-leg raise testing was negative; and she had no motor or sensory deficits of the lower extremities.  The ALJ also noted that, when plaintiff was evaluated in 2006, x-rays showed a solid fusion.  The ALJ also noted that x-rays of plaintiff's knees showed only mild posterior directed angulation at the femoral tibial articulations on the lateral view with weight bearing on each knee, and no other abnormalities.  The ALJ also noted that plaintiff's 2008 MRI revealed little more than mild disc bulging at L3-4.  While the lack of objective medical evidence to support the degree of subjective complaints is not dispositive, it is an important factor, and an ALJ is entitled to consider the fact that the objective medical evidence fails to support the degree of alleged limitations.  20 C.F.R. § 404.1529(c)(2); Kisling v. Chater, 105 F.3d 1255, 1257-58 (8th Cir. 1997); Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)(the lack of objective medical evidence to support the degree of severity of alleged pain is a factor to be considered); Johnson v. Chater, 87 F.3d 1015, 1017-18 (8th Cir. 1996) (it is proper for an ALJ to consider the lack of reliable medical opinions to support a claimant's allegations of a totally disabling condition).

The ALJ also noted that progress notes from 2010 showed that pain medication was controlling plaintiff's back pain, and that the record failed to demonstrate that plaintiff's medications

caused intolerable side effects.   If an impairment can be controlled with medication, it cannot be considered disabling. Patrick v. Barnhart, 323 F.3d 592, 596 (8th Cir.2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

The ALJ also noted that Drs. Shitut, Suthar, Raskas, Berkin, Khattak and Padda all opined that plaintiff could return to some type of light or sedentary type of work with certain restrictions.   The fact that these treating and examining physicians opined that plaintiff could perform some work activity detracts from plaintiff's allegations that her pain and other symptoms preclude all work activity.  Raney v. Barnhart, 396 F.3d 1007, 1010-11 (8th Cir. 2005); see also Edwards v. Secretary of Health and Human Service, 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons, 647 F.2d at 863.

The ALJ noted that, when plaintiff sought pain management treatment in 2009, she characterized her pain as a three on a one-to-ten scale, with ten being the most severe.   This is consistent with the record.   As noted above, the record repeatedly demonstrates that plaintiff characterized her pain as a two or three, and occasionally a four, on a one-to-ten scale when she presented for pain management treatment with Dr. Khattak in 2008 and 2009.  In addition, the record fails to document that plaintiff told her treating or evaluating physicians that she had to turn her body while sitting to alleviate pressure on her spine, had to sit in a reclining position, and that her daily activities were

restricted to the same severe extent she described during the administrative hearing.  The ALJ also noted that some of plaintiff's statements in her Function Report were inconsistent with her hearing testimony.  The ALJ noted that, while plaintiff testified that she had not driven in the past month and did not drive unless it was an emergency, she reported in her Function Report that she drove every third day if she had to.  The ALJ also noted that, despite plaintiff's hearing testimony that she spent more than half of each day with her legs elevated, she reported in her Function Report that she watched her four-year-old child one out of every three days, went shopping every third day, read and watched television, prepared easy meals, dusted, and folded clothes.  The evidence in the record indicating that plaintiff characterized her symptoms and limitations in an inconsistent manner is one factor that detracts from her subjective allegations that she is disabled from all work.  <u>Ply v. Massanari</u>, 251 F.3d 777, 779 (8th Cir. 2001) (an ALJ is entitled to consider a claimant's inconsistent statements in determining his credibility); <u>see also</u> <u>Choate v. Barnhart</u>, 457 F.3d 865, 871 (8th Cir.  2006) (ALJ properly discredited the plaintiff's testimony regarding self-limitation of physical activities when such limitations were inconsistent with the medical records).

The ALJ also observed that plaintiff did not seem highly motivated to attempt to return to work.  Evidence indicating a lack of motivation to work may be used as a credibility factor so long as it is not a dispositive one.  <u>See</u> <u>Ramirez v. Barnhart</u>, 292 F.3d

576, 581 n. 4 (8th Cir. 2002).

A review of the ALJ's credibility determination shows that she evaluated plaintiff's credibility in a manner consistent with the requirements of Polaski v. Heckler.  The ALJ did not, as plaintiff contends, discredit plaintiff's allegations simply because of her ability to perform light daily activities.  Instead, the ALJ considered plaintiff's subjective complaints on the basis of the entire record before her, and set forth numerous inconsistencies that, considered on the record as a whole, detracted from plaintiff's credibility.  An ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.  Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  The ALJ wrote that she was not implying that plaintiff had no pain, but was instead determining whether plaintiff's pain reached a level that rendered her unable to work.  "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."  Perkins v. Astrue, 648 F.3d 892, 900 (8th Cir. 2011) (quoting Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996)); see also Gregg, 354 F.3d at 713-14 (the "crucial question" is not whether the claimant experiences symptoms, but whether her credible subjective complaints prevent her from working).  Because the ALJ considered the Polaski factors and gave good reasons for discrediting plaintiff's subjective complaints, that decision should be upheld.  Hogan, 239 F.3d at 962.

-23-

B.   <u>Residual Functional Capacity Assessment</u>

The ALJ in this case determined that plaintiff retained the RFC to perform the full range of sedentary work.  Plaintiff challenges this determination, arguing that it is not supported by "some medical evidence" as required under the standards of the Eighth Circuit's decisions in <u>Lauer v. Apfel</u>, 245 F.3d 700 (8th Cir. 2001) and <u>Singh v. Apfel</u>, 222 F.3d 448 (8th Cir. 2000), and that the ALJ failed to articulate a legally sufficient rationale for the weight assigned to Dr. Khattak's opinion.  Review of the ALJ's decision reveals no error.

Residual functional capacity is defined as that which a person remains able to do despite her limitations.  20 C.F.R. § 404.1545(a), <u>Lauer</u>, 245 F.3d at 703.  The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  20 C.F.R. § 404.1545(a); <u>Anderson v. Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995); <u>Goff</u>, 421 F.3d at 793.

A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination.  <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711-12 (8th Cir. 2001); <u>Lauer</u>, 245 F.3d at 703-04; <u>McKinney</u>, 228 F.3d at 863.  An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand.  <u>Hutsell</u>, 259 F.3d at 712.  However, although an ALJ must determine the claimant's RFC based upon all

-24-

relevant evidence, the ALJ is not required to produce evidence and
affirmatively prove that a claimant can lift a certain weight or
walk a certain distance.  Pearsall, 274 F.3d at 1217 (8th Cir.
2001); McKinney, 228 F.3d at 863.  The claimant bears the burden of
establishing her RFC.  Goff, 421 F.3d at 790.

        Plaintiff's argument that the ALJ's RFC determination is
in error because it is unsupported by "some medical evidence" is
unfounded.  An ALJ is required to base her residual functional
capacity assessment upon all of the relevant evidence of record,
not solely upon medical evidence.  20 C.F.R. § 404.1545; see also
McKinney, 228 F.3d at 863.  In this case, the ALJ considered and
discussed all of the evidence of record.  The ALJ noted that the
record demonstrated that plaintiff underwent back surgery in 2005
and improved after surgery, and that objective medical testing
revealed that the surgery produced a solid fusion and that
plaintiff had only mild disc bulging at L3-4 without stenosis.  The
ALJ noted that x-rays of plaintiff's knees revealed only mild
findings.  The ALJ noted that when plaintiff presented for follow-
up treatment, she often described her symptoms as mild to moderate,
and reported that her pain was managed with medication.  The ALJ
considered and discussed the findings and opinions from plaintiff's
treating and examining physicians who specifically addressed
plaintiff's ability to function in the workplace, and who opined
that plaintiff remained able to work in what they called a
sedentary to light capacity.  While plaintiff's physicians were
most likely not considering the Commissioner's definitions of

"sedentary" and "light" work activity when using those terms in their opinions, it is significant that they consistently opined that plaintiff remained able to perform work-related activities. The ALJ noted that Dr. Berkin opined that plaintiff needed to limit her lifting to 10 to 20 pounds; that Dr. Padda opined that plaintiff could not work *beyond* the sedentary level but that she had not yet reached maximum medical improvement; that Dr. Suthar opined that plaintiff could work in capacities ranging from light to sedentary; and that Dr. Raskas opined plaintiff could return to work with a 30-pound lifting restriction.  Dr. Berkin opined that plaintiff only needed to avoid "extended" periods of walking or standing, and Dr. Suthar opined that plaintiff should exercise to improve her level of physical fitness and expressed his approval when plaintiff reported that she was walking for exercise.  The restrictions imposed by these treating providers and by Dr. Berkin are consistent with the ALJ's determination that plaintiff should avoid prolonged walking or standing or lifting in excess of ten pounds, and her conclusion that plaintiff could perform sedentary work.  This administrative record contains more than adequate medical evidence to support the ALJ's RFC assessment.[2]

---

[2] Plaintiff's reliance upon <u>Singh</u> and <u>Lauer</u> is somewhat misplaced. In <u>Lauer</u>, the ALJ substituted his own lay opinion for that of medical experts.  There is no evidence that the ALJ here committed this error.  This administrative record contains numerous medical reports from various doctors addressing plaintiff's ability to function in the workplace, opinions upon which the ALJ did, and was entitled to, rely.  In <u>Singh</u>, briefly, the ALJ improperly rejected the opinion of a treating neurologist whose opinion was well-supported by the record, in favor of the opinions of consulting doctors who were not specialists and who had never examined the

Contrary to plaintiff's argument, the ALJ properly considered the outlying opinion of Dr. Khattak, who imposed significant restrictions upon plaintiff due to physical and mental factors.  In general, "[a] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).  A treating physician's opinion is not automatically entitled to controlling weight, however, because the ALJ must evaluate the record as a whole.  Id. An ALJ is entitled to discount or even disregard a treating physician's opinion where other medical assessments are better supported, or where the treating physician renders inconsistent opinions that undermine confidence in those opinions.  Id. An ALJ is not required to "rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (citing Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)).

The ALJ detailed Dr. Khattak's findings and opinions, wrote that she had considered Dr. Khattak's opinion, and noted inconsistencies between Dr. Khattak's opinion and the balance of the other objective medical evidence in the record as a whole,

---

claimant.  In the case at bar, however, the ALJ had the benefit of opinions from several physicians who had examined and even treated plaintiff and, as will be discussed, the weight of the evidence of record fails to provide much support for Dr. Khattak's opinion.

-27-

including the other physician opinions regarding plaintiff's ability to function in the workplace.  An ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole.  Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).  It is the duty of the ALJ, not this Court, to resolve conflicts in the evidence.  Id.

The ALJ wrote that, although Dr. Khattak opined that plaintiff could not even tolerate a low-stress job due to anxiety and depression, plaintiff did not allege these conditions as bases for disability, nor did plaintiff testify that such conditions precluded her from working.  Instead, plaintiff testified that she could not work because of pain. "[A]n ALJ is not obliged 'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (quoting Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)).  The ALJ also noted that, while plaintiff does have a history of depression, it did not appear to preclude her from working in the past. A condition that was present but not disabling during working years and has not worsened  cannot be used to prove a present disability.  Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) (per curiam); Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). The ALJ noted that Dr. Shitut described plaintiff as merely "minimally overweight." (Tr. 36, 346).  The ALJ noted that, when plaintiff presented for treatment at St. Louis Internal Medicine, she reported that medication was controlling her symptoms, and she

-28-

had no medical findings of sensory or motor deficits. Finally, the ALJ noted that, despite the extreme limitations Dr. Khattak assessed, his own treatment records indicate that plaintiff routinely characterized her pain as a level three on a one-to-ten scale. See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes"); see also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (when a treating physician's notes are inconsistent with his or her residual functional capacity assessment, we decline to give controlling weight to the residual functional capacity assessment).

Plaintiff suggests that the ALJ failed to comment upon Dr. Padda's October 2006 statement that plaintiff would be capable of performing sedentary activity but was temporarily disabled and unemployable. This contention is meritless. The ALJ's opinion contains a detailed discussion of plaintiff's October 2006 visit to Dr. Padda, the limitations assessed, and the qualification Dr. Padda included: that plaintiff had not yet reached maximum medical improvement. (Tr. 37). The ALJ then discussed subsequent medical records showing improvement in plaintiff's condition, and subsequent opinions from other physicians regarding plaintiff's ability to perform work-related activity. Nor does Dr. Padda's opinion provide support for Dr. Khattak's opinion, as plaintiff suggests. Dr. Padda opined that plaintiff could not work above the sedentary level while Dr. Khattak assessed extremely restrictive

-29-

limitations.

The ALJ in this case limited plaintiff to sedentary work. This represents serious functional restrictions, and supports the conclusion that the ALJ did not entirely reject the medical opinion evidence suggesting that plaintiff had significant limitations. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (The ALJ's finding that plaintiff was limited to sedentary work is itself a significant limitation, and reveals that the ALJ did give some credit to the opinion evidence).

Plaintiff also suggests that there are medical records that support the conclusion that she is disabled. As required, the undersigned has considered the evidence which "fairly detracts from the ALJ's findings." Groeper v. Sullivan, 932 F.2d 1234, 1237 (8th Cir. 1991); see also Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998). However, where, as here, substantial evidence supports the ALJ's decision, that decision may not be reversed merely because substantial evidence may support a different outcome. Briggs, 139 F.3d at 608; Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992), citing Cruse, 867 F.2d at 1184. Review of the ALJ's RFC determination reveals that she properly exercised her discretion and acted within her statutory authority in evaluating the evidence of record as a whole. The ALJ conducted a legally sufficient credibility determination, properly considered all of the evidence of record, and properly considered and weighed all of the medical opinion evidence. The ALJ's extensive discussion, analysis and consideration of the evidence in the case at bar

-30-

undermines plaintiff's challenges of the RFC assessment.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) (rejecting a similar argument and affirming the ALJ's RFC finding based upon the ALJ's review of the medical records and credibility factors). Having reviewed the ALJ's decision with the requisite deference, the undersigned concludes that her RFC determination is supported by substantial evidence on the record as a whole.

> C.   Function By Function Analysis

Plaintiff argues that the ALJ failed to undertake the function-by-function analysis required by Pfitzner v. Apfel, 169 F.3d 566 (8th Cir. 1999).  Review of the ALJ's decision reveals no error.

As plaintiff contends, the RFC should "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including functions such as sitting, standing, and walking. Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003) (quoting S.S.R. 96-8p, 1996 WL 374184, at *1).  In Depover, the Eighth Circuit noted that an ALJ's failure to make the function by function assessment "could result in the adjudicator overlooking some of an individual's limitations or restrictions."  Id.  The Depover Court noted that, in Pfitzner, 169 F.3d 566, the ALJ's decision was reversed on this basis because the ALJ had failed to "specify the details" of the claimant's RFC, and instead described it "only in general terms," leaving it unclear whether substantial evidence supported the ALJ's decision that the claimant could

-31-

return to his past relevant work.  Id.

In the case at bar, however, (as in Depover) the ALJ did not merely describe plaintiff's RFC in "general terms."  See Id. Instead, as discussed above, the ALJ conducted a detailed analysis of all of the objective evidence of record and of plaintiff's testimony, and formulated a specific RFC that took into account all of plaintiff's limitations that the ALJ found credible and supported by the record.  The ALJ wrote that, while plaintiff could not perform physically demanding work, and could not engage in prolonged walking or standing or lifting in excess of ten pounds, plaintiff could perform sedentary work.   The ALJ also cited the specific definition of sedentary work from the Commissioner's Regulations.  It is apparent that the ALJ's RFC determination was made following a full examination of the record, and it does not appear that the ALJ overlooked any of plaintiff's limitations. While the ALJ did not present her RFC findings in bullet-point format with each limitation immediately followed by a discussion of the supporting evidence, such a rigid format is not required by the Eighth Circuit or by the Social Security Rulings, as plaintiff suggests.

D.   Plaintiff's Past Relevant Work

The ALJ determined that plaintiff could return to her past work as a "medical office receptionist."  (Tr. 38, 39). Plaintiff alleges error, arguing that the ALJ failed to make specific findings regarding the actual demands of her past work. In response, the Commissioner contends that the ALJ specifically

-32-

stated that she had compared plaintiff's RFC with the demands of
her past work and found that plaintiff could perform the job as
actually and generally performed, and that the record supports such
conclusion.  Plaintiff's argument is well-taken.

In reaching her conclusion that plaintiff could return to
her past relevant work, the ALJ wrote as follows:

> While the claimant cannot perform physical
> demanding [sic] work, the claimant has the
> capacity to perform sedentary work.  She is
> precluded from prolonged walking or standing
> and lifting in excess of ten pounds.  With
> this residual functional capacity, she can
> return to her past relevant work as a medical
> office receptionist.
>
> (Tr. 38).
>
> . . .
>
> **The claimant is capable of performing past
> relevant work as a medical office
> receptionist.  This work does not require the
> performance of work-related activities
> precluded by the claimant's residual
> functional capacity (20 CFR 404.1565).**
>
> In comparing the claimant's residual
> functional capacity with the physical and
> mental demands of this work, the undersigned
> finds that the claimant is able to perform it
> as actually and generally performed.
>
> (Tr. 39) (emphasis in original).

The foregoing does not amount to sufficient findings
regarding the demands of plaintiff's past work.  Defining a
claimant's residual functional capacity is not the only task
required at step four.  The ALJ is also required to "fully
investigate and make explicit findings as to the physical and
mental demands of a claimant's past relevant work and to compare
that with what the claimant herself is capable of doing before he

-33-

determines that she is able to perform her past relevant work." Nimick v. Secretary of Health & Human Serv., 887 F.2d 864, 866 (8th Cir. 1989).  "A conclusory determination that the claimant can perform past work, without these findings, does not constitute substantial evidence that the claimant is able to return to his [or her] past work."  Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991).  One way in which the ALJ may discharge this duty is via reference to the specific job descriptions in the Dictionary of Occupational Titles ("DOT") that are associated with the claimant's past work.  See Sells, 48 F.3d at 1047.

In the case at bar, the only description of plaintiff's past work the ALJ offered was to describe it by the title "medical office receptionist."  (Tr. 38, 39).  The ALJ did not refer to the DOT, nor did the ALJ refer to any other evidence describing the duties of the job of "medical office receptionist."

The DOT does not contain an entry for a job titled "medical office receptionist," but it does contain different entries that include the word "receptionist" in the title.  One could arguably infer that the ALJ was implicitly referring to the DOT classification 237.367-038 ("receptionist"), a job which is indeed performed at the sedentary level.  However, in this case, the lack of an express reference reflects more than a mere deficiency in opinion-writing.  Cf. McGinnis v. Chater, 74 F.3d 873, 875 (8th Cir. 1996) (asserted errors in opinion writing do not require reversal if the error probably had no effect on the outcome).  In her Work History Report, plaintiff did not describe any of her past jobs using the term "receptionist."  She described

-34-

the job she performed from 2001 to 2005 as "customer service" in a "medical equipment" business (Tr. 139), and also as "medical equipment delivery and intake" (Tr. 166) and "customer service tech." (Tr. 149). She described the duties of this job as "[t]ools to instruct or assembly Medical Equipment I take sheet to deliver and instruct on equipment all paper work for billing." (Tr. 140). She wrote that she lifted medical equipment, and that she was always walking, bending, crouching and kneeling, and that she lifted up to 50 pounds. (Id.) This most certainly does not describe work performed at the sedentary level.

Plaintiff described her other past jobs using various titles such as "patient care worker" in a hospital (which involved lifting patients); "assistant secretary," "press operator" in a factory; doctor's assistant in a doctor's office; assembly worker in a factory; CNA/Nurse's aide in a nursing home; and waitress and "food tech" in a restaurant. (Tr. 139, 166).

As plaintiff contends,

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

Baker v. Secretary of Health and Human Services, 955 F.2d 552, 556-57 (8th Cir. 1992) (quoting Soc. Sec. Ruling No. 82-62).

Rather than form conclusions or inferences regarding what the ALJ probably meant when she used the term "medical office receptionist" to describe plaintiff's past work, the undersigned

determines that remand is necessary to allow the ALJ to make legally sufficient findings regarding the actual demands of plaintiff's past work.   The undersigned does not discount the possibility that the ALJ may conclude that plaintiff in fact can perform her past relevant work or, should the ALJ decide to continue the sequential evaluation process to step five, that she can perform other work in the local and national economies.

Therefore, for all of the foregoing reasons, on the claims that plaintiff raises,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for proceedings consistent with this opinion.



_____
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE


Dated this 21st day of September, 2012.